# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David W. McKeague | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 2593 | DATE | 6/5/2000 |
| CASE TITLE | Katial vs. Massachusetts Mutual Life | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: Defendant's motion to dismiss Count XVI (8-1) of Katial's first amended complaint is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 0 9 2000 date docketed | 23 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 6/8/2000 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| GL | courtroom deputy's initials | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUBHASH C. KATIAL,

       Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, a Delaware
corporation,

       Defendant.
_____/

Case No. 99 C 2593

HON. DAVID W. McKEAGUE
(District Judge, Western
District of Michigan,
sitting by designation)

**DOCKETED**

**MEMORANDUM OPINION ON DEFENDANT'S
MOTION TO DISMISS COUNT XVI**

**JUN 0 9 2000**

Plaintiff Subhash Katial has filed a seventeen-count complaint against Massachusetts Mutual Life Insurance Company ("Mass Mutual"), alleging four different types of employment discrimination (based on his race, color, ethnicity and national origin), breach of contract, promissory estoppel, defamation of character, intentional infliction of emotional distress, and false light/invasion of privacy, all of which stem from Katial's negotiations with Mass Mutual regarding an employment opportunity, and Mass Mutual's subsequent withdrawal of its conditional offer of employment. Mass Mutual has moved to dismiss count XVI of the first amended complaint, which alleges intentional infliction of emotional distress, contending Katial has failed to state a claim



upon which relief can be granted. For the following reasons, the Court grants Mass Mutual's motion.

## I. BACKGROUND [1]

Between July 1997 and May 1998, Mass Mutual and Katial negotiated about the possibility of Katial accepting employment as the General Agent at Mass Mutual's Chicago/O'Hare insurance agency. During the time of the negotiations, Katial worked for John Hancock Mutual Life Insurance Company. The negotiations involved numerous telephone and in-person interviews between Katial and various corporate officers of Mass Mutual, including then-Vice President and later Regional Director Russell Duade, then-Agency Vice President and later, Regional Vice President Gary Greenfield, as well as Regional Director Sal Lavely. On May 7, 1998, Mass Mutual mailed Katial a so-called "conditional offer of employment." On May 8, 1998, before Katial received the mailed offer, Greenfield called Katial to inform him that Mass Mutual was withdrawing its offer of employment.

Katial alleges Mass Mutual intentionally inflicted emotional distress through numerous comments made to him, leading up to Mass

---

[1] For the purpose of deciding this motion to dismiss, the Court accepts plaintiff's well-pleaded allegations as true. See *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

2

Mutual's withdrawal of its offer of employment. In count XVI, Katial incorporates all previous paragraphs of his complaint, and alleges "the actions of Mass Mutual, as more fully described above, show that Mass Mutual intended or showed a reckless disregard of the probability that it was causing plaintiff severe and emotional distress. Further, Mass Mutual's actions toward Katial were so outrageous as to be shocking to the conscience of a reasonable person."

In his response to Mass Mutual's motion to dismiss, Katial identifies twelve specific paragraphs in his complaint which allege facts supporting his claim for intentional infliction of emotional distress. Paragraphs 20 and 22 describe the steps Katial took in anticipation of being hired by Mass Mutual, including preparation of a business plan specifically stating his intent to target ethnic development. Several other paragraphs of the complaint allege that Greenfield questioned Katial's performance at the John Hancock agency. For example, paragraph 13 alleges that "Greenfield's reception of Katial was cool and at one point Greenfield commented that Greenfield was going to check [Katial] out closely." Paragraph 21 states Greenfield told Katial that he heard Katial had "churned" policies at John Hancock and paragraph 29 alleges

3

Greenfield said he heard Katial had "fixed" the licensing problems of a former agent of Katial's who was of Indian origin.

Katial devotes paragraphs 24 and 27 to allegations that employees at Mass Mutual, specifically Greenfield, questioned him on several occasions about whether white employees had left John Hancock because of Katial, resulting in a staff comprised primarily of Indian and Asian agents. In paragraphs 24, 30, 31 and 32, Katial alleges Greenfield questioned him about his reasons for leaving an earlier job at New York Life and the reasons for his divorce, telling Katial that Greenfield had heard Katial had had sexual relations with his employees at New York Life, leading both to Katial's termination and to his divorce. Further, Greenfield allegedly shared these suspicions both with Katial's daughter and with one of Katial's longtime employees, who denied them. When Katial objected to the questions, Greenfield replied that he was only "doing his duty." (¶ 32) In paragraph 25, Katial alleges Greenfield stated, "It is not if Subhash is ready for the agency — it is whether the agency is ready for Subhash." Finally, Katial alleges that on May 8, 1998, Lavely called another Mass Mutual employee to inform him that several "character issues" had arisen with regard to Katial and to ask for the home telephone numbers of several of Katial's references. (¶ 33)

4

## II. ANALYSIS

The Court may dismiss Katial's claim for intentional infliction of emotional distress only if it appears beyond doubt that he can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although the Court has an obligation to draw all reasonable inferences in plaintiff's favor, see *Hi-Lite Products Co. v. American Home Products Corp.*, 11 F.3d 1402, 1405 (7th Cir. 1993), it is not constrained by the legal characterizations placed on those allegations by him. See *Republic Steel v. Penn. Eng'g Corp.*, 785 F.2d 174, 178 (7th Cir. 1986).

In order to state a claim for intentional infliction of emotional distress, Katial must allege: 1) conduct by Mass Mutual which is truly outrageous; 2) that Mass Mutual intended that its conduct would cause Katial severe emotional distress or knew there was a high probability of such a result; and 3) that Mass Mutual's actions actually did cause severe emotional distress. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993). In Illinois, intentional infliction of emotional distress may be found only where the conduct is so outrageous and extreme that it goes "beyond all possible bounds of decency" such that no reasonable man

5

could be expected to endure it. *Id.* at 703, (citing *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1977). The tort does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (citing Restatement (Second) of Torts § 46, cmt. d, at 73 (1965)).

Even if the Court accepts as true every paragraph of Katial's complaint, Mass Mutual's behavior was not so extreme and outrageous as to make out a valid claim for intentional infliction of emotional distress. The actions of which Katial complains basically consist of comments made to him regarding the racial makeup of his agency at John Hancock, questions regarding possible business improprieties, and questions about his personal life, his divorce, and rumors regarding sexual relations between Katial and his employees. Although such comments could be labeled improper, rude or offensive, the behavior Katial describes simply does not rise to the level of outrageousness necessary to support a claim for intentional infliction of emotional distress.

Illinois courts have dismissed cases alleging facts far more outrageous than those contained in Katial's complaint. For example, in *Briggs v. North Shore Sanitary Dist.*, 914 F.Supp. 252

*(N.D. Ill. 1996)*, the court held that although the defendant's actions of hanging a "pickaninny" doll in the work area of the African-American plaintiff and subjecting her to racial slurs for over a year were deplorable, they could not form the basis of a claim for intentional infliction of emotional distress. See also *Harriston*, 992 F.2d at 703 (affirming dismissal of claim by plaintiff alleging she was, among other things, forced out of management, excluded from office activities, disciplined for no reason, and falsely accused of poor sales). Although Katial contends his allegations are different from these "typical job-related complaints," the Court cannot agree. The comments about which Katial complains all occurred within the framework of his negotiations with Mass Mutual regarding his employment there, and several of them related directly to questions Mass Mutual had about possible improprieties in Katial's working past. Although the comments about which Katial complains and the allegations in the above cases may not properly be characterized as "typical," neither can they be deemed so outrageous as to support a claim of

intentional infliction of emotional distress.[2]

Katial's contention that Mass Mutual held a position of power over him which exacerbated its actions does not save his claim. Illinois courts have held that "the extreme and outrageous nature of [the relevant] conduct may arise from the defendant's abuse of some position which gives him actual or apparent authority over the plaintiff." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). Yet the authority described in such cases was far more overwhelming to the plaintiffs than was Mass Mutual's power over Katial. For example, the *Kolegas* defendants were radio disc jockeys who broadcast to the public extremely offensive statements about the plaintiff's wife and son, both of whom suffered from a debilitating disease, and also broadcast statements about the plaintiff's business and his relationship with his wife. In finding that the plaintiff succeeded in alleging intentional

---

[2]Katial cites *Geist v. Martin*, 675 F.2d 859 (7th Cir. 1982), for the proposition that a claim of intentional infliction of emotional distress may stand where the defendant's actions are taken not for legitimate reasons, but merely to punish the plaintiff. In *Geist*, the plaintiff alleged that the defendants terminated her husband solely to retaliate against her for exercising her legitimate rights under insurance contracts she held with defendants' company. The court distinguished cases in which the defendant's actions, although possibly inappropriate, were in furtherance of legitimate goals, such as debt collection. See, e.g., *Public Finance Corp. v. Davis*, 360 N.E.2d 765 (Ill. 1976). All of Katial's allegations relate to Mass Mutual's legitimate right to investigate his background prior to offering him a position of employment. Thus, this case is different from *Geist*, where the defendants had no right to punish the plaintiff, with whom they had no relationship, by terminating her husband.

infliction of emotional distress, the court noted the public nature of the statements and the fact that the defendants were able to totally control the broadcast. The defendants did not give the plaintiff a chance to defend himself against the comments even though he specifically purchased air time to promote both his business and a charity fundraiser that he had planned. See also *McGrath*, 533 N.E.2d at 810 (court found intentional infliction of emotional distress where defendant bank participated in fraud upon plaintiff and then attempted to extort millions of dollars from plaintiff, while aware that plaintiff suffered a serious heart condition).

The fact that Mass Mutual was negotiating with Katial regarding his possible employment does not create a situation of power or control by Mass Mutual akin to those in *Kolegas* or *McGrath*. Katial does not allege he was particularly susceptible to any sort of emotional stress, or that Mass Mutual was aware of any such condition. Mass Mutual did not threaten Katial with severe economic reprisals, as did the defendant in *McGrath*. Nor did Mass

Mutual publicize its alleged offensive statements, as in *Kolegas*.[3] Katial's allegations simply do not state a claim for intentional infliction of emotional distress.

### III. CONCLUSION

For the above reasons, Mass Mutual's motion to dismiss count XVI of Katial's first amended complaint will be granted. An order consistent with this opinion shall issue forthwith.

Dated: June 5, 2000

HON. DAVID W. McKEAGUE
UNITED STATES DISTRICT JUDGE

---

[3]Indeed, the *Kolegas* court noted that it would have been inclined to consider the offensive comments mere insults if they had been expressed privately. *Kolegas*, 607 N.E.2d at 212.

10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUBHASH C. KATIAL,

    Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, a Delaware
company,

    Defendant.
_____/

Case No. 99 C 2593

HON. DAVID W. McKEAGUE
(District Judge, Western
District of Michigan,
sitting by designation)

**ORDER OF PARTIAL DISMISSAL**

In accordance with the Court's memorandum opinion of even date,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss count XVI of plaintiff's first amended complaint is **GRANTED**; and

**IT IS FURTHER ORDERED** that count XVI of the first amended complaint, asserting a claim for intentional infliction of emotional distress, is **DISMISSED** for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Dated: June 5, 2000

/s/ David W. McKeague
HON. DAVID W. McKEAGUE
UNITED STATES DISTRICT JUDGE