# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David W. McKeague | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2593 | **DATE** | 7/15/2002 |
| **CASE TITLE** | Katial vs. Massachusetts Mutual | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Opinion: The Court grants defendant's motion for summary judgment (49-1) as to Counts I, VI, VIII, XII, XIII, IV, and XVII of the first amended complaint. There are no counts remaining in plaintiff's first amended complaint. Therefore, the Court dismisses this case with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | **84** |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/18/2002 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED

JUL 2 2 2002

SUBHASH C. KATIAL,

       Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, a Delaware
Corporation,

       Defendant.

_____/

Case No. 99-cv-2593

HON. DAVID W. McKEAGUE

## OPINION

This case involves allegations of breach of contract,
discrimination based on race and national origin, pursuant to 42
U.S.C. §1981 and Title VII, defamation of character, and false
light/invasion of privacy, by Subhash Katial ("Katial" or
"plaintiff") against Massachusetts Mutual Life Insurance Company
("Mass Mutual" or "defendant"). Now before the Court is defendant's
motion for summary judgment on the remaining counts of plaintiff's
first amended complaint.[1] *See* dkt. #49. For the reasons set forth

---

[1] On June 9, 2000, the Court granted defendant's motion to
dismiss plaintiff's claim for intentional infliction of emotional
distress (Count XVI of the first amended complaint). *See Katial v.
Massachusetts Mutual Life Ins. Co.,* 99 C 2593, 2000 WL 765066 (N.D.
Ill. June 9, 2000); *see also* dkt. #23. By order entered on the
docket on February 27, 2002, the Court dismissed the following
counts of plaintiff's first amended complaint, pursuant to the
parties' stipulation: (1) promissory estoppel (Count II); (2) §1981
claims for race, color, and national origin discrimination premised
on termination of employment (Counts III-V); (3) §1981 claim for

84

below, the Court grants defendant's motion for summary judgment.

## I. BACKGROUND

Plaintiff Katial is a brown-skinned male of Indian descent. *See* First Amended Complaint at ¶1. In June of 1997, Joe Powers, an executive recruiter, contacted Katial about an employment opportunity at Mass Mutual. *See* Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition Brief") 1. Russell Duade, Mass Mutual's second vice president of distribution, met with Katial several times over the next several months. *See id.* at 2; Massachusetts Mutual Life Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment ("Defendant's Brief in Support") 2. During this time Katial met with Mass Mutual officers in Illinois and Mass Mutual's headquarters in Springfield, Massachusetts. Plaintiff's Opposition Brief at 2. Gary Greenfield, the Agency Vice President for the Central Region, was one of the Mass Mutual officers Katial met with during this period. *See* Defendant's Brief in Support at 2. Katial would have reported to Greenfield if Katial had become a Mass Mutual General Agent in the Chicago area. Massachusetts Mutual Life Insurance Company's Statement of Material Facts to which there is no Genuine Issue ("Defendant's SOF") ¶15;

color discrimination premised on failure to hire (Count VII); (4) Title VII claim for race, color, and national origin discrimination premised on termination of employment (Counts IX-XI); and (5) Title VII claim for color discrimination premised on failure to hire (Count XIV). *See* dkt. # 61.

2

Plaintiff's Response to Defendant's Rule 56.1 Statement of Uncontested Facts ("Response to Defendant's SOF") 1. Greenfield would recommend a candidate for the position to Burvin Pugh, who had the authority to hire the candidate. *See* Defendant's SOF at ¶22. Pugh, however, followed Greenfield's recommendations. *See* Response to Defendant's SOF at ¶22.

Early in 1998, Mass Mutual began providing Katial with product information, as well as a check list of items to provide in anticipation of his appointment. *See* Plaintiff's Opposition Brief at 2. Mass Mutual officials met with Katial many times between March 23 and early May of 1998. *See* Plaintiff's Opposition Brief at 2-3; Defendant's Brief in Support at 3. One of these meetings took place at Katial's home over dinner, where he claims that the Mass Mutual officials toasted him and welcomed Katial and his wife to the Mass Mutual family. *See* Plaintiff's Opposition Brief at 2-3. Many of these meetings were used to refine the five-year business plan that Katial had submitted. *See* Plaintiff's Opposition Brief at 3; Defendant's Brief in Support at 3.

In late April of 1998, Greenfield had a conversation with Bill O'Donnell, an agent with the O'Hare Agency. *See* Plaintiff's Opposition Brief at 3; Defendant's Brief in Support at 3-4. O'Donnell stated that he had heard rumors that Katial had engaged in the practice of "churning" policies at John Hancock, and that numerous white staff people had left the John Hancock Insurance

agency when Katial took over. *See* First Amended Complaint at ¶21; Plaintiff's Opposition Brief at 3. Katial explained that the allegations were untrue, and Greenfield was satisfied with those explanations. *See* Plaintiff's Opposition Brief at 3.

On May 4, 1998, Katial had lunch with Duade, Greenfield, and other Mass Mutual employees. *See id.* Earl Jordan, a retired former general agent for the O'Hare Agency, was also present. *See* Defendant's Brief in Support at 4. Katial claims that during this lunch, he once again was welcomed to the Mass Mutual team. *See* Plaintiff's Opposition Brief at 3. After the lunch, Katial learned that Jordan had made a comment about Katial's accent. *See* Plaintiff's Opposition Brief at 3; Defendant's Brief in Support at 4.

After the lunch, the group returned to Mass Mutual's offices. Katial was brought into Greenfield's office where Greenfield was talking on the speakerphone. *See* Plaintiff's Opposition Brief at 3. Katial was asked to listen to the conversation between Greenfield and Bill O'Donnell. *See id.* Katial contends that O'Donnell claimed to have information about "the Indian general agent" and stated that if Katial took over the O'Hare Agency he and other white agents would leave. *See id.* Katial claims that Mass Mutual planned to announce him as the general agent of the O'Hare Agency on May 5, 1998, despite O'Donnell's allegations. *See id.* at 4.

After Greenfield announced to the staff of the O'Hare Agency

4

that a new general agent was coming on board, an agent named Mukal Bhatt asked to speak to Greenfield. Bhatt asked if Katial was the new general agent, and stated that he had some concerns about Katial. *See* Plaintiff's Local Rule 56.1 Statement of Undisputed Facts ("Plaintiff's SOF") ¶31. Bhatt expressed concerns about Katial's business ethics, including his involvement with replacement activity. Defendant's SOF at ¶61.

Greenfield called Katial to discuss Bhatt's allegations, as well as rumors of a sexual affair he had had with an employee at New York Life. Defendant's SOF at ¶62; Response to Defendant's SOF at ¶62; First Amended Complaint at ¶¶30-31. Katial denied the allegations. Katial's daughter, Charlotte Confer, who worked for Katial at the time, came into Katial's office. *See* Plaintiff's SOF at ¶116. Greenfield asked to speak to her about the alleged affair. *See id.* She denied the affair to Greenfield, but at her deposition she claimed that at the time she spoke to Greenfield she believed that an affair had taken place. *See id.* at ¶116-118; Defendant's SOF at ¶¶67, 70-71; Response to Defendant's SOF at 1, ¶¶70-71. Greenfield also asked to speak to Chuck Carr about the rumored affair. *See* Plaintiff's SOF at ¶119; Defendant's Brief in Support at 6. Carr denied that such an affair had occurred. *See* Plaintiff's SOF at ¶119; Defendant's Brief in Support at 6.

On May 8, 1998, Bhatt again contacted Greenfield regarding his concerns about Katial's possible appointment. *See* Plaintiff's SOF

at ¶133. After this meeting with Bhatt, Greenfield decided to recommend that Mass Mutual not appoint Katial as a general agent. Plaintiff's SOF at ¶133, as amended by Plaintiff's Sur-Reply in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Sur-Reply") 1-2. Greenfield also had a phone conversation that day with Mike Cochran, a former associate of Katial's, who was also critical of Katial. *See* Plaintiff's SOF at ¶134. Later on May 8, 1998, Greenfield called Katial to rescind what Mass Mutual labels its conditional offer. *See* Response to Defendant's SOF at ¶89.

Katial continued with John Hancock during the entire time he was being recruited by Mass Mutual. *See* Defendant's SOF at ¶103; Response to Defendant's SOF at 1. In January of 1999, Katial resigned from John Hancock to become a Managing Director for Metropolitan Life Insurance Company. *See* Defendant's SOF at ¶105; Response to Defendant's SOF at 1. Plaintiff filed this lawsuit on April 20, 1999. *See* dkt. #1.

## II. STANDARD OF REVIEW

Summary judgment is proper when there is "no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court looks beyond the pleadings, also considering any depositions, affidavits, and admissions on file, to determine whether there is a genuine issue of material fact. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). In ruling on a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the nonmoving party, and [ ] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). The Court must "review the record as a whole . . . giv[ing] credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *See id.* at 151 (citations omitted).

Nonetheless, one of the primary purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, in opposing a properly supported motion for summary judgment, the nonmoving party may not simply rest on the bare allegations in its pleadings. *See* Fed. R. Civ. P. 56(e). "[A] party opposing a properly supported motion for summary judgment ' . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). Moreover, the party opposing summary judgment must produce more than a "scintilla of evidence" on

essential elements of its claim in order to avoid summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Merely showing the existence of "some metaphysical doubt as to the material facts" does not suffice to defeat a properly supported motion for summary judgment. *Matsushita*, 475 U.S. at 586 (citations omitted). A material fact is one that might affect the outcome of the case, taking into consideration the applicable substantive law. *Anderson*, 477 U.S. at 248. In other words, summary judgment is proper when there is "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### A. Breach of Contract Claim (Count I)

Plaintiff contends that as of May 7, 1998, when Mass Mutual made what it identifies as a conditional offer to plaintiff, the parties had a contract based on their conduct.[2] Plaintiff claims that the parties' agreement is comprised of plaintiff's employment application, his five-year business plan, and documents from Mass Mutual concerning compensation and staffing. *See* Plaintiff's Opposition Brief at 12. Plaintiff contends that he accepted Mass Mutual's offer of employment, as reflected in the various documents

---

[2]Plaintiff conceded at oral argument that it was not arguing a contract based on Mass Mutual's conditional offer of employment. Plaintiff agreed that he had not accepted the conditional offer prior to Mass Mutual's revocation on May 8, 1998.

supplied by Mass Mutual and in Mass Mutual's statement to plaintiff to get his team ready, by participating in a toast welcoming plaintiff to the firm and by starting the process of transferring his license to Mass Mutual. *See* Plaintiff's Opposition Brief at 12.

Illinois law requires that the terms of an employment contract be clear and definite. *McInerney v. Charter Golf, Inc.,* 176 Ill.2d 482, 485 (1997). It is questionable, even drawing all reasonable inferences in plaintiff's favor, that plaintiff has shown an employment contract with clear and definite terms based on the parties' conduct. The Court need not reach this issue, however, because even assuming that the parties did form a contract prior to May 7, 1998, plaintiff's argument that Mass Mutual breached the contract fails because employment contracts in Illinois are generally terminable at will. "Employment contracts in Illinois are presumed to be at-will and are terminable by either party; this rule, of course is one of construction which may be overcome by showing that the parties agreed otherwise." *McInerney,* 176 Ill.2d at 485 (citing *Duldulao v. St. Mary of Nazareth Hospital Center,* 115 Ill.2d 482, 489 (1987)). At oral argument, plaintiff conceded that the terms of the contract allegedly reached by the parties did not contain a "just cause" termination clause.

Moreover, the documents that plaintiff claims evidence the parties' contract do not state that plaintiff's employment is for a particular term, thereby negating the presumption of at-will

9

employment. *See Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025, 1034 (7th Cir. 1998) (citation omitted)(stating that "[u]nder Illinois law, an employer-employee relationship without an explicit durational term is presumed to be an at-will relationship"). An examination of those documents indicates that they include compensation projections over varying periods of time, not guaranteed total compensation figures. *See* Plaintiff's Exhibits to Local Rule 56.1 Statement of Undisputed Facts ("Plaintiff's Exhibits"), Exhs. D, E, F, K, L; Plaintiff's SOF at ¶¶31, 73 (identifying figures as projections in Exhibits D, E, and K). Compensation projections based on expected revenues, however, do not establish that the parties agreed to any particular contractual term. Even had Mass Mutual promised Katial an annual salary of $150,000, that promise, in and of itself, would not constitute an agreement by Mass Mutual not to terminate Katial for at least one year. In this case, Mass Mutual did not even guarantee Katial's total salary, instead outlining projections based on manpower, revenue, and expense assumptions.

In conclusion, even drawing all reasonable inferences in favor of the plaintiff, there is no evidence in the record to show that Mass Mutual agreed to hire plaintiff for any particular period of time. Moreover, plaintiff has conceded that the documents it claims evidence a contract between the parties do not contain a "just cause" termination provision. Therefore, even assuming that the

10

parties had formed a contract for employment, such an employment agreement was terminable at will under Illinois law. Accordingly, Mass Mutual cannot be liable for breach of contract. The Court grants defendant's motion to dismiss Count I of plaintiff's first amended complaint.

## B.   §1981 and Title VII Claims (Counts VI, VIII, XII, XIII)

While Illinois law allows an employer to terminate an at-will employment contract, federal civil rights law prohibits the employer from doing so based on an employee's race or national origin. Plaintiff alleges that Mass Mutual terminated his contract for employment based on his race and national origin, in violation of 42 U.S.C. §1981 and Title VII.

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. §1981(a) (1994). Title VII makes it "an unlawful employment practice for an employer - (1) to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1) (1994). "The same standards governing liability under Title VII apply to Section 1981." *Gonzalez,* 133 F.3d at 1035.

At oral argument, plaintiff conceded that his claims of race and national origin discrimination are based on circumstantial, not direct, evidence. Thus, the burden shifting framework set forth in

11

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), applies. Plaintiff must first make out a prima facie case of employment discrimination. Mass Mutual then has the burden of producing a legitimate, nondiscriminatory reason for not hiring the plaintiff. *See Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir. 1994). Even if Mass Mutual produces a legitimate, nondiscriminatory reason for not hiring plaintiff, plaintiff may challenge that reason claiming it is a pretext for race and national origin discrimination. *See id.*

1. *The Prima Facie Case*

The Seventh Circuit has cautioned against "bypassing the prima facie inquiry, and [ ] instead require[s] plaintiffs to establish each element of their case." *Sanders v. Norfolk Southern,* No. 01-4114, 2002 WL 1378867, at *2 (7th Cir. June 24, 2002) (citing *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir. 1997)).

In the context of a failure to hire, the plaintiff must show that (1) he is a member of a protected class, (2) he is qualified for the position for which he applied, (3) his employment application was rejected, and (4) the employer either filled the position with someone not belonging to plaintiff's protected class or left the position unfilled. *See Sanders,* 2002 WL 1378867, at *2.[3] The Court questions whether plaintiff has set forth specific

---

[3]In his opposition brief, plaintiff describes the *prima facie* case for, and cites to case law involving, a termination of employment, not a failure to hire. *See* Plaintiff's Opposition Brief at 8 (citing *Stockett v. Muncie Ind. Transit Sys.,* 221 F.3d 997 (7th Cir. 2000); *Stalter v. Wal-Mart Stores, Inc.,* 195 F.3d 285

facts showing that there is a genuine issue for trial on the fourth prong of the *prima facie* case, in particular, for his claim of national origin discrimination.

Mass Mutual ultimately selected another person to be general manager of the O'Hare agency, after rejecting Katial for that position. *See* Massachusetts Mutual Life Insurance Company's Exhibits Submitted with its Statement of Material Facts to which there is no Genuine Issue, Vol. II ("Greenfield deposition") 74, lines 14-17. Plaintiff states that his "replacement" was Caucasian. *See* Plaintiff's Sur-Reply at 4. Plaintiff cites to three portions of Greenfield's deposition to support this statement, two of which do not establish that the person who assumed the general manager position at the O'Hare agency was Caucasian.

Greenfield acknowledged that he participated in hiring the general agent for the O'Hare agency after Katial's rejection. *See* Greenfield deposition at 74, lines 14-17. Greenfield, however, could not recall the last name of the person who assumed the general agent's position. *See id.* at 74-76. When asked whether the last name was Toppelson, Greenfield replied: "No, that's not it." *See id.* at 75, lines 4-10. Greenfield later identified a "Mr. Tollefson" as Caucasian. *See id.* at 304, lines 2-4. Tollefson, however, is identified in the context of other applicants for general agency; plaintiff provides no citations to the record where

---

285 (7th Cir. 1999)).

Tollefson is identified as the person who became the general agent at the O'Hare agency after Katial was denied the position.

In his deposition, however, Greenfield also stated that during his tenure at Mass Mutual there were no non-Caucasian applicants for general agent. *See id.* at 304, lines 7-10. On a motion for summary judgment, the Court is to draw all reasonable inferences in favor of the non-moving party. Plaintiff's evidence on the fourth prong of his *prima facie* case for race discrimination is extremely weak. Nonetheless, the Court concludes that reading the evidence in the light most favorable to plaintiff, he has shown that because the O'Hare general agent position was filled and there were no non-Caucasian applicants for general agent during Greenfield's tenure at Mass Mutual, the person who filled the general agent position at the O'Hare agency must have been Caucasian.

The facts offered by plaintiff, however, do not suffice to satisfy the fourth prong of his *prima facie* case for national origin discrimination. Greenfield's statement relates to the race, not the national origin, of the applicants for general agency positions at Mass Mutual. Even drawing all reasonable inferences in favor of the plaintiff, the Court cannot conclude that Greenfield's statement about the absence of non-Caucasian applicants means that there were no applicants of Indian descent. In fact, Greenfield was unable to identify the national origin or ethnicity of various Mass Mutual applicants when specifically asked about their national

14

origin. *See id.* at 302, lines 5-6, 304, lines 5-6.

The only evidence that plaintiff offers on the national origin of general agent candidates is the deposition testimony of Duade. In response to a question whether there were general agents of Indian descent *at the time* that the so-called conditional offer to Katial had been withdrawn, Duade answered "no." Plaintiff's Exhibits, Exh. P, at 125. Duade's statement, however, was in response to a question limited to the time frame during which Katial's conditional offer was withdrawn. *See id.* His response does not establish that the general agent hired to fill the position for which Katial had applied was not of Indian descent.

Plaintiff has produced only a scintilla of evidence on the fourth prong of his *prima facie* case, which is an essential element of his claim of national origin discrimination. Therefore, summary judgment is appropriate on plaintiff's claims of national origin discrimination under both 42 U.S.C. §1981 and Title VII, found in Counts VIII and XII of the first amended complaint.

2. *Legitimate, Nondiscriminatory Reason*

There is no dispute that defendant has satisfied its burden of producing a legitimate, nondiscriminatory reason for not hiring the plaintiff. Defendant contends that it declined to hire Katial based on its concerns about his business ethics and an affair that Katial had with a former employee.

15

*3.    Pretext*

Plaintiff argues that defendant's reasons for not hiring him are a pretext. An employee may establish pretext by proving one of the following: "(1) Defendant's explanation . . . had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) . . . the reason stated was insufficient to warrant the discharge." *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1133 (7th Cir. 1994). At oral argument, plaintiff stated that he could show pretext under all three categories, but was focusing his argument on category (2) - Mass Mutual's explanation was not the real reason for its failure to hire Katial.

*a.    No basis in fact*

Plaintiff argues that there is no evidence to support defendant's claims that he engaged in business and sexual misconduct. *See* Plaintiff's Opposition Brief at 4. Thus, plaintiff contends that if the rumors about his business practices and sexual affair are untrue, then defendant's reliance on those rumors in refusing to hire him demonstrate pretext. Plaintiff's argument, however, misconstrues Seventh Circuit case law on pretext.

The Seventh Circuit has held that "the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions." *McCoy v. VGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir. 1992). Instead, the issue is "whether the employer honestly believes in the reasons it offers." *Id.*

16

Therefore, whether the rumors about Katial turned out to be true or not is not relevant. The question is whether Greenfield honestly relied on the information provided in making the decision not to hire Katial. Katial has produced no evidence that the conversations on which Greenfield relied did not·occur. Thus, plaintiff is incorrect that he can demonstrate pretext by showing that Mass Mutual's legitimate, nondiscriminatory reason had no basis in fact.

   b.   *Not the Real Reason*

   Plaintiff contends that his alleged business and sexual improprieties are not the real reason that defendant declined to hire him. He claims that "[i]t was not until issues of race/national origin. . . accent . . . and "white flight" . . . arose, that Mass Mutual changed its mind about [him]." Plaintiff's Opposition Brief at 10. Plaintiff argues that Greenfield had put aside questions about plaintiff's alleged business and sexual improprieties prior to making the conditional offer on May 7, 1998; therefore, plaintiff contends that defendant's reliance on those reasons to justify its failure to hire him is unworthy of belief.

   Plaintiff mis-characterizes the facts in this case. In support of his claim that race and national origin changed Mass Mutual's decision to hire him, plaintiff cites to fifteen references to his undisputed statement of facts, none of which make *any* mention of race or national origin. *See* Plaintiff's SOF at ¶¶16, 17, 34, 37, 47-49, 56, 60, 61, 86-88, 90, 95; Plaintiff's Opposition Brief at

10. These citations to the record describe the mechanics of the ongoing negotiations between Katial and Mass Mutual; they do not provide evidence of race or national origin discrimination.

In addition, the comment by Earl Jordan to Greenberg about Katial's accent and O'Donnell's statements that white agents would leave the O'Hare agency if Katial took over were made prior to May 7, 1998. Even if the parties had a contract based on their conduct prior to May 7, 1998, the so-called conditional offer extended by Greenfield on that date evidences a continuing desire on the part of Mass Mutual to hire the plaintiff. Plaintiff contends that as early as April 28, 1998 - 10 days before the May 7 offer was made - O'Donnell expressed concerns to Greenfield about "white flight." Plaintiff's SOF at ¶¶74-76. Earl Jordan's comment about having difficulty understanding Katial's accent was made after he attended a lunch on May 4, 1998, at which Katial was present. Plaintiff's SOF at ¶¶109, 110. Yet, if accent and concerns over "white flight" were the real reason for not hiring Katial, then why did Greenberg, on behalf of Mass Mutual, extend an offer to Katial on May 7, 1998, ten days after O'Donnell raised the issue of "white flight" and three days after Jordan commented that he had difficulty understanding Katial's accent? *See* Plaintiff's SOF at ¶¶74-76, ¶¶109-110. It is simply inaccurate to argue that Mass Mutual only changed its mind about hiring plaintiff when issues of accent and white flight arose.

Plaintiff also mis-characterizes the holding in the Seventh Circuit's decision in *Hasham v. California State Bd. of Equalization,* 200 F.3d 1035 (7th Cir. 2000). Plaintiff contends that the court in *Hasham* "held that where a plaintiff presented only evidence of comments relating to a 'foreign accent' and comments to the effect that the company 'did not want to hire any more foreigners' enough evidence was presented so that a reasonable jury could have concluded that discriminatory animus governed the employment decision." Plaintiff's Opposition Brief at 10 (citing *Hasham,* 200 F.3d at 1044-45). *Hasham* does not stand for this proposition of law. In *Hasham,* the decision maker's credibility was in serious question because he offered contradictory reasons for the challenged promotion decision. *See id.* at 1045. Those contradictory statements and the decision maker's lack of credibility, coupled with his comments about the plaintiff's accent and the hiring of foreigners, were sufficient such that a reasonable jury could conclude that discriminatory animus governed the challenged promotion decision. *See id.*

Plaintiff has offered no evidence that Greenfield or Mass Mutual have provided contradictory reasons to support the decision not to hire him. Therefore, plaintiff's reliance on *Hasham* is misplaced.

In conclusion, plaintiff fails to produce sufficient facts to show pretext based on his assertion that defendant's reasons for

not hiring him are unworthy of belief. The evidence in the record, including plaintiff's own statements, establishes that several days to a week and a half prior to the May 7 conditional offer, defendant was aware of Jordan's comment about Katial's accent and O'Donnell's alleged comment about "white flight." Mass Mutual nonetheless extended Katial an offer of employment. Thus, plaintiff has failed to set forth sufficient facts to show that Mass Mutual's decision not to hire him changed when Jordan commented on his accent and O'Donnell expressed concerns about "white flight." Accordingly, the Court finds that plaintiff is unable to establish pretext based on its claim that his alleged business and sexual improprieties were not the real reason that Mass Mutual failed to hire him.

   *c.   Does not warrant the employment action*

   Plaintiff claims that because Greenfield knew of the various rumors about his business practices and sexual affair prior to making the conditional offer on May 7, 1998, those rumors did not warrant Mass Mutual's decision not to hire him. *See* Plaintiff's Opposition Brief at 10.   This argument, however, confuses the second and third methods for demonstrating pretext. If the rumors of plaintiff's business and sexual improprieties, in fact, were true, then Mass Mutual was clearly warranted in not hiring the plaintiff as a general agent. Hiring Katial knowing that he had engaged in questionable business practices and a sexual affair with

a former subordinate could expose the firm to large potential liability. Therefore, the Court concludes that plaintiff cannot establish pretext by arguing that Mass Mutual's decision not to hire him was not warranted.

   d.   *Title VII and §1981 Claims – Conclusion*

The Court grants defendant's motion for summary judgment on Counts VIII and XII of the first amended complaint for failure to establish a *prima facie* case of national origin discrimination. The Court also grants defendant's motion for summary judgment on Counts VIII and XII of the first amended complaint because plaintiff fails to produce sufficient facts to create a genuine issue of material fact with regard to pretext on his claims of national origin discrimination. Finally, the Court grants defendant's motion for summary judgment on Counts VI and XIII of the first amended complaint because plaintiff fails to produce sufficient facts to create a genuine issue of material fact with regard to pretext on his race discrimination claims.

C.   <u>Defamation of Character (Count XV)</u>

Plaintiff contends that false statements about his business and sexual improprieties were published to the following persons: (1) Charlotte Confer, his daughter, (2) Charles Carr, (3) Jerry Villanueva, (4) Angelo Del Giudice, (5) John Gotchall, (6) Cary Broussard, and (7) the unidentified persons to whom Villanueva, Del Giudice, Gotchall, and Broussard had spoken about plaintiff's

ruined deal with Mass Mutual. *See* Plaintiff's Opposition Brief at 17.

In Illinois, there is a qualified privilege from liability for defamatory statements. *See Kuwik v. StarMark Star Marketing and Admin., Inc.,* 156 Ill. 2d 16 (1993). "[The] privilege is based on the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *See id.* at 24 (citation omitted). When the qualified privilege applies, the plaintiff must show that "the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." *Id.* (citation omitted). An employer may lose the qualified privilege, however, if it fails to act in good faith, has no interest or duty to uphold, does not limit its statement to the scope of its duty, or publishes the statement on an improper occasion or in an improper manner to inappropriate parties. *See id.* at 25. The qualified privilege has been applied in the employment setting. *See LaScola v. U.S. Sprint Communications,* 739 F. Supp. 431 (N.D. Ill. 1990), *aff'd,* 946 F.2d 559 (7th Cir. 1991).

Greenfield's inquiries regarding plaintiff's alleged sexual and business improprieties to Charlotte Confer and Charles Carr are protected by the qualified privilege. Greenfield, on behalf of Mass Mutual, had information that plaintiff had engaged in unethical

business practices, which, if true, could damage the business reputation of Mass Mutual and potentially leave it open to liability. Plaintiff's alleged sexual affair involved a subordinate. Mass Mutual had an obligation to ascertain the circumstances under which such an affair occurred in order to avoid potential liability in the future in the event that a Mass Mutual employee claimed that plaintiff had made improper sexual advances toward her. Greenfield's phone calls were made to Confer, one of plaintiff's employees, and Carr. Greenfield asked plaintiff whether he could speak with Carr about the alleged affair. *See* Plaintiff's SOF at ¶119. Such limited inquiries, especially when agreed to by the plaintiff, as in the case of Carr, fall within the scope of the qualified privilege. Finally, plaintiff has offered no evidence that Mass Mutual published the defamatory statements knowing that they were false or with a reckless disregard for their falseness.

Plaintiff's allegations that Mass Mutual published the defamatory statements to other persons besides Confer and Carr is without any support in the record. Villanueva, Del Giudice, and Gotchall did not tell plaintiff that Greenfield had contacted them or made inquiries of them regarding plaintiff's sexual or business affairs. *See* Plaintiff's Exhibits, Exh. A, Vol. VIII, at 71-76. Broussard also does not make such an allegation in her deposition. Instead, the statements by Villanueva, Del Giudice, Gotchall, and Broussard all concern damage to plaintiff's reputation as a result

of the Mass Mutual deal falling through, not as a result of defamatory statements made by Mass Mutual about plaintiff's business practices and sexual affair. *See id.; see id.,* Exh. Z, at 135-39. Plaintiff bases his defamation claim with regard to the statements by Villanueva, Del Giudice, Gotchall, and Broussard solely on his own belief that Mass Mutual was defaming him. *See id.,* Exh. A, Vol. VIII, at 75-76. Plaintiff's perceptions and beliefs, however, do not create a genuine issue of material fact.

In conclusion, defendant's inquiries to Confer and Carr are protected by a qualified privilege. Plaintiff's claims that his reputation was damaged based on the Mass Mutual deal falling apart do not support a claim for defamation; plaintiff fails to produce any evidence to the Court that Mass Mutual made defamatory statements to Villanueva, Del Giudice, Gotchall, or Broussard. Therefore, the Court grants defendant's motion for summary judgment on Count XV of the first amended complaint.

D.   False Light/Invasion of Privacy (Count XVII)

In *Lovgren v. Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 422 (1989), the Illinois Supreme Court recognized the tort of false light invasion of privacy. *See Zechman v. Merrill, Lynch, Pierce, Fenner & Smith,* 742 F. Supp. 1359, 1372 (N.D. Ill. 1990).

> To state a claim for invasion of privacy through
> portrayal in a false light, a plaintiff must allege three
> elements: first, he was placed in a false light before
> the public as a result of the defendant's actions;

24

second, the false light in which the plaintiff was placed
would be highly offensive to a reasonable person; and
third, the defendants acted with actual malice.

*Silk v. City of Chicago,* No. 95 C 0143, 1996 WL 312074, at *35

(N.D. Ill. June 7, 1996) (citing *Lovgren,* 126 Ill.2d at 419).

Unlike defamation, "the statement must not merely be published to

a third person . . . but publicized, which the Restatement (Second)

has defined as making the matter public 'by communicating it to the

public at large, or to so many persons that the matter must be

regarded as substantially certain to become one of public

knowledge.'" *Zechman,* 742 F. Supp. at 1372 (quoting RESTATEMENT

(SECOND) OF TORTS §652D, comment a n.13); *see Silk,* 1996 WL 312074,

at *35.

In his opposition brief, plaintiff contends that the

derogatory information about his alleged sexual improprieties and

insurance industry violations became widely known in the industry

and was harmful to him. *See* Plaintiff's Opposition Brief at 14.

Plaintiff cites to statements made to him by Jerry Villanueva,

Angelo Del Giudice, and John Gotchall that his deal with Mass

Mutual had gone sour. *See* Plaintiff's SOF at ¶¶141, 143, 144. In

addition, plaintiff offers the deposition testimony of Cary

Broussard to support his claim that his reputation was tarnished in

the industry based on Mass Mutual's publication of his alleged

business and sexual improprieties. *See id.* at ¶145.

The basic problem with plaintiff's argument is that none of

the evidence that he offers, much of which is hearsay, supports his claim that Mass Mutual communicated the damaging information to other members of the insurance industry. The references in plaintiff's brief are to statements about his reputation being tarnished or damaged because the Mass Mutual deal fell through, not because Mass Mutual published information about plaintiff's business or sexual affairs. *See* Plaintiff's Opposition Brief at 15; Plaintiff's Exhibits, Exh. A, Vol. VII, at 201-203, Vol. VIII, at 73-76. Moreover, Broussard expressly states in her deposition that none of the persons with whom she had spoken had heard anything other than the fact that the Mass Mutual deal had fallen through. *See* Plaintiff's Exhibits, Exh. Z, at 133-140. Without any evidence to show that Mass Mutual communicated the information about plaintiff's business and sexual affairs to the public at large, or to so many persons that the matter would be substantially certain to become one of public knowledge, plaintiff is unable to make out a claim for false light/invasion of privacy.

Plaintiff contends, however, that widespread publicity is not required when he has a special relationship with those persons to whom the damaging information is disclosed. *See* Plaintiff's Opposition Brief at 15. At oral argument, plaintiff claimed that Mass Mutual communicated the false information about his business practices and sexual affair to Charlotte Confer, his daughter, and Charles Carr. Plaintiff cites to two Illinois Court of Appeals

cases, *Miller v. Motorola,* 202 Ill. App. 3d 976 (1st Dist. 1990), and *Kurczba v. Pollock,* 318 Ill. App.3d 686 (1st Dist. 2000), in support of his argument.

The Court finds plaintiff's argument to be without merit. In *Miller,* the plaintiff asserted claims for unreasonable intrusion upon the seclusion of another and public disclosure of private facts, not the tort of false light. *See Miller,* 202 Ill. App.3d at 978. In *Kurczba v. Pollock,* 318 Ill. App.3d 686 (1st Dist. 2000), which did involve a claim for false light invasion of privacy, the court cited approvingly to *Miller.* In *Kurczba,* however, the information was disseminated to various prominent members of the Polish and Chicago communities, the Chicago Tribune, three Polish newspapers, and several Polish-American organizations. *Id.* at 691. In discussing the element of publicity, the court quoted from the Restatement (Second) of Torts, which provides, in pertinent part, that "[a]ny publication in a newspaper or magazine, even of small circulation, . . . is sufficient to give publicity within the meaning of the term as it is used in this Section." *Id.* at 697.

The facts of plaintiff's case are clearly distinguishable from those in *Kurczba.* First, there is no allegation of publication in any newspaper or magazine, even one of small circulation. Second, plaintiff has alleged that the derogatory information about his business practices and sexual affair was communicated to only Confer and Carr, not to the numerous persons, organizations, and

27

newspapers alleged in *Kurczba*.

Therefore, the Court concludes that there has been a complete failure of proof on an essential element of plaintiff's false light claim – that the derogatory information on which his claim is based was communicated to the public at large. Accordingly, the Court grants defendant's motion for summary judgment as to Count XVII of plaintiff's first amended complaint.

## IV. CONCLUSION

The Court grants defendant's motion for summary judgment as to Counts I, VI, VIII, XII, XIII, XV, and XVII of the first amended complaint. There are no counts remaining in plaintiff's first amended complaint. Therefore, the Court dismisses this case with prejudice. The Court will enter an order consistent with this opinion.

Date: July **15**, 2002

DAVID W. McKEAGUE
UNITED STATES DISTRICT JUDGE